USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5-4-15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JASON MOCZO,

        Petitioner,

  - against -

PHILIP D. HEATH,
Superintendent, Sing Sing Correctional Facility

        Respondent.

REPORT AND
RECOMMENDATION

12-CV-8509 (AT) (RLE)

**TO THE HONORABLE ANALISA TORRES, U.S.D.J.:**

## I. INTRODUCTION

Petitioner Jason Moczo ("Moczo"), a New York State prisoner currently incarcerated at Sing Sing Correctional Facility, seeks a writ of habeas corpus pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254. (Pet. for Writ of Habeas Corpus ("Pet.").) At trial, Moczo was convicted of three counts of rape in the first degree, N.Y. Penal Law § 130.35(1); three counts of criminal sexual act in the first degree, N.Y. Penal Law § 130.50(1); one count of aggravated sexual abuse in the third degree, N.Y. Penal Law § 130.66(1); one count of criminal possession of a weapon in the third degree, N.Y. Penal Law § 265.02(1); and one count of endangering the welfare of a child, N.Y. Penal Law § 260.10(1). (Mem. of Law in Opp'n to Pet. for Writ of Habeas Corpus ("Resp't Memo") at 1.) The trial court judge sentenced Moczo to an aggregate term of imprisonment of twenty-three years, followed by twenty-three years of post-release supervision.[1] (Pet. at 1; Resp't Memo at 13.)

---

[1] Respondent's memorandum notes that the New York State Department of Corrections and Community Services' records indicate that the term of post-release supervision is twenty-five years, the statutory maximum. Resp't Memo at 13. Moczo's petition and the Sentencing Proceedings indicate the term is twenty-three years. *See* Sentencing Proceedings at 11. For purposes of this Report and Recommendation, the Court assumes the twenty-three years to be correct.

Moczo challenges his conviction on four grounds: (1) the trial court's *Sandoval* ruling resulted in substantial prejudice, and violated his Fifth and Fourteenth Amendment rights to a fair trial and to testify; (2) the trial court erroneously admitted a 911 call into evidence, in violation of the Confrontation Clause of the Sixth Amendment and the Fifth and Fourteenth Amendment right to due process; (3) the verdict was based on legally insufficient evidence and was against the weight of the evidence; and (4) his sentence is cruel and unusual, in violation of the Eighth Amendment. (Pet. at 6.) For the reasons that follow, I recommend that Moczo's Petition be **DENIED**.

## II. BACKGROUND

### A. Factual Background

On August 18, 2007, Moczo and his wife, Y.W., were living together in a homeless shelter with Y.W.'s four-year-old son. (Trial Transcript ("Tr.") at 48-50.) Moczo and Y.W. argued throughout the day on various issues, including finances and whether Y.W. would attend a birthday party with Moczo's family. (*Id.* at 57-60.) Y.W. refused to go, and Moczo took her son with him to the party. (*Id.* at 60.) When they returned later that evening, Y.W. was preparing to go out because she was still upset with Moczo. Y.W. visited a friend, Val Valentine ("Valentine"), about ten blocks from the shelter. (*Id.* at 61, 63-64, 274, 276.) When Y.W. returned around midnight, Moczo demanded to know where she had been, but she refused to say. (Tr. at 68-69.) Moczo then threatened her with a box cutter, beat her, raped her three times, forced her to perform oral sex three times, and inserted an object into her vagina.[2] (*Id.* at 69-97.) Y.W.'s son was present in the room throughout the attack. (*Id.* at 70-71.) The assault lasted all night and into the morning. (*Id.* at 68-102.) Y.W. fled the apartment at 8:30 a.m. and a shelter

---

[2] Y.W. could not identify the object but testified that she did not believe it to be part of the human body. Tr. at 87.

2

employee, Milton Davis ("Davis"), called 911 on her behalf after she told him that her husband had beaten and raped her. (*Id.* at 103-09, 287-90.)

An ambulance took Y.W. to the hospital around 9:00 a.m. that day, and Dr. Christina Mannino examined her. (*Id.* at 129-30, 389-406.) Dr. Mannino photographed Y.W.'s physical injuries and performed an internal examination, recovering a semen sample identified as Moczo's and approximately a teaspoon of blood from Y.W.'s vagina. (*Id.* at 319, 324, 389-405.)

## B. Procedural History

Police arrested Moczo on August 21, 2007, and charged him with three counts of rape in the first degree, three counts of a criminal sexual act in the first degree, one count of aggravated sexual abuse in the third degree, one count of criminal possession of a weapon in the third degree, and one count of endangering the welfare of a child. (Tr. at 36-37.)

### 1. *Sandoval* Hearing

The prosecution asked the trial court for permission to present evidence regarding Moczo's prior criminal history, including the nature of the convictions and the underlying facts therein. (Transcript of *Sandoval* Hearing ("Sandoval Tr.") at 8.) Moczo's criminal history included: (1) a youthful offender adjudication for attempted sale of a controlled substance in the third degree; (2) a guilty plea to criminal contempt in the second degree; and (3) a first degree burglary conviction. (*Id.* at 8-11.) The criminal contempt plea related to contacting an ex-girlfriend by repeatedly knocking on her door in violation of an order of protection. (*Id.* at 11.) The burglary conviction related to an incident in which Moczo and another individual entered a woman's apartment, displayed a firearm, taped the woman to a chair, punched her in the face, and stole jewelry. (*Id.* at 8-9.)

During the hearing, the prosecution argued that Moczo's actions spoke to his "willingness to take his own interest before that of society" and in both the burglary case and the instant rape charge, Moczo "victimized [a] woman that he knew." (Sandoval Tr. at 9-10.) According to Moczo's defense counsel, this was propensity evidence that would unduly prejudice the jury. (*Id.* at 12-13.) The trial court ruled that under *People v. Sandoval*, 34 N.Y.2d 371 (1974), if Moczo testified at trial, the prosecution could use Moczo's prior burglary conviction as well as the underlying facts. (*Id.* at 13.) The court prohibited the prosecution from using Moczo's criminal contempt guilty plea or his youthful offender adjudication. (*Id.* at 13-14.)

### 2. The Trial[3]

The prosecution's case included testimony from Y.W., Davis, Valentine, Dr. Mannino, and criminalist Britton Morin. (Resp't Mem. at 4-12.) Police officers Joseph Green, David Marmol, Mary King, Annette Ruiz, Detective Matthew Steiner, and Detective Christopher Montgomery also testified. The defense's theory was that Moczo was seeking a divorce from Y.W. and, therefore, she was an inconsistent and unreliable witness. (*See* Tr. at 430-84.) Moczo did not testify and the defense presented no witnesses or other evidence in support of his defense. (*Id.* at 430.)

A jury convicted Moczo on all counts. (*Id.* at 575-79.) On February 25, 2009, Moczo was sentenced as a second violent felony offender to twenty-three years in state prison, followed by twenty-three years of post-release supervision. (Sentencing Proceedings ("S.") at 11.)

---

[3] Moczo's first trial resulted in a mistrial when a juror admitted during deliberations that she had not revealed during voir dire that her husband had raped her. Resp't Memo at 4; Transcript of Mistrial at 56-57.

4

### 3. Appeals

Moczo filed an appeal in the Appellate Division, First Department, arguing that: (1) the trial court's *Sandoval* ruling was erroneous and resulted in severe prejudice; (2) the trial court's admission of the 911 call was erroneous and highly prejudicial; (3) the verdict was against the weight of the evidence; and (4) Moczo's sentence was harsh and excessive. (Resp't Mem., Ex. A.) The Appellate Division denied the appeal on June 28, 2011. *People v. Moczo*, 85 A.D.3d 650 (1st Dep't 2011). On September 28, 2011, the New York State Court of Appeals denied Moczo leave to appeal. *People v. Moczo*, 18 N.Y.3d 860 (2011). On October 2, 2012, Moczo filed this writ of habeas corpus. (Pet. at 16.)

### III.   DISCUSSION

### A. Threshold Issues

### 1. Timeliness

A petitioner must file an application for a writ of habeas corpus within one year of his conviction becoming final. 28 U.S.C. § 2244(d)(1)(A). A conviction becomes final "'when [the] time to seek direct review in the United States Supreme Court by writ of certiorari expires'" that is, ninety days after the final determination by the state court. *Williams v. Artuz*, 237 F.3d 147, 150 (2d Cir. 2001) (quoting *Ross v. Artuz*, 150 F.3d 97, 98 (2d Cir. 1998)). Here, the Court of Appeals denied Moczo leave to appeal his conviction on September 28, 2011. *People v. Moczo*, 17 N.Y.3d 860 (2011). Therefore, Moczo's conviction became final for purposes of the AEDPA ninety days later, on December 27, 2011. (Pet. at 3.) Moczo's petition is dated October 2, 2012, and is therefore timely.[4] (*Id.* at 16.)

---

[4] As a *pro se* and incarcerated habeas petitioner, the mailbox rule applies to Moczo; thus, the Court deems his Petition filed on the date it was given to correctional authorities for mailing to the Court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988); *Noble v. Kelly*, 246 F.3d 93 (2d Cir. 2001), *cert. denied*, 534 U.S. 886 (2001). Respondent concedes that Moczo's Petition is timely.

5

## 2. Exhaustion

A federal court may not consider a petition for habeas corpus unless the petitioner has exhausted all state remedies, procedurally and substantively. 28 U.S.C. § 2254(b)(1)(A); *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Dorsey v. Kelley*, 112 F.3d 50, 52 (2d Cir. 1997). In order for a claim to be procedurally exhausted, the petitioner must raise a claim at each level of the state court system, "[presenting] the substance of his federal claims to the highest court of the pertinent state." 28 U.S.C. § 2554(b)(1); *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994) (internal citations omitted); *see also Picard*, 404 U.S. at 270, 275.

A petitioner must utilize all available procedures permitted by state law to meet the exhaustion requirement. *See* 28 U.S.C. § 2254(c). In New York, a petitioner must file a motion to vacate judgment pursuant to New York Criminal Procedure Law § 440.10 if a claim that requires exhaustion was not raised on direct appeal. *Reyes v. Keane*, 118 F.3d 136 (2d Cir. 1997). A claim is substantively exhausted when: (1) "the nature or presentation of the claim [in state court, was] . . . likely to alert the court to the claim's federal nature," and (2) the claim presented to the habeas court is "substantially equivalent" to the claims brought in state court. *Jones v. Keane,* 329 F.3d 290 (2d Cir. 2003); *see also Daye v. Attorney General*, 696 F.2d 186, 192 (2d Cir. 1982). The *Daye* Court stated four ways in which a petitioner can present a case in state court to show that the federal issues were "fairly presented," including "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Daye*, 696 F.2d at 194.

A district court, however, may deny a claim on the merits even if the petitioner has not exhausted his claims. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *see also Zarvela v. Artuz*, 364 F.3d 415, 417 (2d Cir. 2004) (reviewing a habeas claim on the merits in spite of the state's argument that the claims were unexhausted); *Melendez v. LaValley*, 942 F. Supp. 2d 419, 422-23 (S.D.N.Y. 2013) (finding it unnecessary to decide whether petitioner's claims were exhausted because they were meritless); *Smith v. Lee*, 10 Civ. 6941, 2012 WL 5288742, at *3 (S.D.N.Y. Oct. 26, 2012) (declining to decide whether petitioner's claims had been exhausted in state court because the claims were meritless).

Moczo has not exhausted his claims here. He presented his *Sandoval* claim entirely as a state law evidentiary claim and did not cite any federal cases or principles in his brief to the Appellate Division. (*See* Brief for Def.-Appellant at 15-22.) He did not cite any principles obviously associated with specific Constitutional law issues, and the state law cases cited did not cite federal cases in their analyses. (*See id.*) Moczo did not raise his second claim, that the 911 call was erroneously admitted hearsay evidence, in the state courts below. On direct appeal, Moczo argued that the 911 tape was unduly prejudicial and erroneously admitted for that reason, but makes no mention of hearsay or the Confrontation Clause of the Sixth Amendment. (*See id.* at 22-26.) He presented the evidentiary error solely as a state law claim, and did not cite any federal Due Process cases or principles in his argument. (*See id.*) Moczo did not raise his third claim, that the evidence was legally insufficient to support a verdict, on direct appeal. In his Petition, Moczo states that on direct appeal his claim was wrongly worded or labelled as a "weight of the evidence" claim instead of a legal insufficiency claim. (Pet. at 6.) Mozco did not,

however, exhaust any legal insufficiency claim either because he did not raise such a claim on appeal. On direct appeal, Moczo argued only that the verdict was against the weight of the evidence. (*Id.* at 26.) Finally, Moczo did not raise his fourth claim, that his sentence was cruel and unusual, in the state court. Instead, Moczo argued that the sentence was "harsh and excessive," but his brief does not mention the U.S. Constitution, federal caselaw, or federal principles. Instead, he argues in his brief that his "near maximum" sentence should be reduced according to the appellate court's discretion, but makes no mention of any purported Constitutional defect in his sentence, nor does he cite any federal cases or clearly implicate any Constitutional principles. (*Id.* at 33-34.)

Because Moczo has failed to exhaust any of his claims, I recommend that the Petition be **DISMISSED**.

## B. Merits of Moczo's Claims

Even if Moczo's claims are considered on the merits, the Petition should be **DENIED**.

### 1. Standard of Review

Under the AEDPA, a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." *Sellan v. Kuhlman*, 261 F.3d 303, 313 (2d Cir. 2001) (quoting *Aycox v. Lytle*,

196 F.3d 1174, 1178 (10th Cir. 1999)). Under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13 (O'Connor, J., concurring and writing for the majority in this part). Under the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[F]ederal law, as determined by the Supreme Court, may as much be a generalized standard that must be followed, as a bright-line rule designed to effectuate such a standard in a particular context." *Overton v. Newton*, 295 F.3d 270, 278 (2d Cir. 2002); *see also Yung v. Walker*, 341 F.3d 104, 111 (2d Cir. 2003) (amended order) (district court's habeas decision that relied on precedent from the court of appeals is remanded for reconsideration in light of "the more general teachings" of Supreme Court decisions). Importantly, "[a]n unreasonable application of federal law is different from an *incorrect* application of federal law." *Williams*, 529 U.S. at 410 (emphasis in original). The "distinction creates a substantially higher threshold for obtaining relief." *Renico v. Lett*, 596 U.S. 766 (2010) (citation omitted). Determination of factual issues made by a state court "shall be presumed to be correct," and the applicant "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Because Moczo appears *pro se*, the Court construes his Petition liberally in order to raise the strongest arguments it presents. *See, e.g., Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) ("We construe complaints filed by pro se litigants liberally and 'interpret them to raise the

9

strongest arguments that they suggest.'") (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

### 2. *Sandoval* Claim

Moczo's Petition, liberally construed, asserts that the trial court's *Sandoval* ruling violated his Constitutional right to testify on his own behalf, a right founded in the Fifth, Sixth and Fourteenth Amendments, *Rock v. Arkansas*, 483 U.S. 44, 49-53 (1987), and, more generally, the ruling denied him a fair trial under the Due Process Clause of the Fourteenth Amendment.

Generally, a state court ruling regarding the admissibility of a defendant's prior convictions does not raise constitutional issues cognizable on federal habeas corpus review. *See generally Pulley v. Harris*, 465 U.S. 37, 41 (1984) (errors of state law do not form a sufficient basis for habeas relief). Only an error in the application of an evidentiary rule that "was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it" would rise to the level of a constitutional deprivation. *Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir. 1992) (quoting *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985)). Furthermore, any constitutional violation must have "had substantial and injurious effect or influence in determining the jury's verdict" in order for a court to grant habeas relief. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (quotations omitted).

A court need not reach the merits of a *Sandoval* claim if the petitioner did not testify at trial. *See Luce v. United States*, 469 U.S. 38, 41 (holding that "to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify" because where he does not, the nature of his testimony is "unknowable," any harm from the ruling is "wholly speculative," the court "cannot assume that the adverse ruling motivated [the]

10

defendant's decision not to testify," and the court has no way to conduct a harmless error analysis).

Although *Luce* involved a direct appeal of a federal court's interpretation of a federal rule of evidence, courts have consistently applied its reasoning to a federal habeas court's review of state court rulings. *See Mercado v. Phillips*, No. 04 Civ. 2204, 2011 WL 1157617, at *6 (S.D.N.Y. Feb. 22, 2011) (collecting cases); *Butler v. Graham*, No. 07 Civ. 6586, 2008 WL 2388740, at *8 (S.D.N.Y. June 12, 2008) ("[E]ven though there is no unequivocal guidance on the application of *Luce* in habeas cases challenging a state-court conviction, we are of the opinion that the analysis in *Luce* should be deemed applicable to a habeas petitioner . . ."); *Peterson v. Lefevre*, 753 F. Supp. 518, 521 (S.D.N.Y. 1991), *aff'd*, 940 F.2d 649 (2d Cir. 1991). The Court finds that the *Luce* rationale appropriately applies in this case and Moczo's failure to testify at trial precludes his raising this issue on habeas review.

### 3. The 911 Call Evidence

Construed liberally, Moczo claims that the trial court erred by denying him a fundamentally fair trial in violation of the Fifth and Fourteenth Amendments, and, in particular, the admission of hearsay evidence (the 911 call) violated his Sixth Amendment right to confront the witnesses against him.

The admissibility of hearsay evidence "is a matter 'pertaining to New York state courts not cognizable on federal habeas review.'" *Morales v. Portuondo*, 1999 WL 608773, at *3 (S.D.N.Y. Aug. 12, 1999) (*quoting Montalvo v. Portuondo*, 1998 WL 851589, at *7 (S.D.N.Y. Dec. 9, 1998)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-69 (1991); *Ayala v. Leonardo*, 20 F.3d 83, 91 (2d Cir. 1994), *cert. denied*, 513 U.S. 888 (1994). Therefore, review is permissible only where "[an] evidentiary error made at trial had a 'substantial effect or influence in

11

determining the jury's verdict.'" *Morales v. Portuondo*, 1999 WL 608773, at *3 (*quoting Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)); see also *Rosario v. Kuhlman*, 839 F.2d 918, 925 (2d Cir. 1988). For a habeas petitioner to prevail on a claim that an evidentiary error constituted a deprivation of due process, he must show that the error was so pervasive as to have denied him a fundamentally fair trial. *United States v. Agurs*, 427 U.S. 97, 108 (1976). To establish such a deprivation, a petitioner must show that erroneously admitted evidence "was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." *Johnson*, 955 F.2d at 181 (quotation omitted).

Davis, an employee at the shelter in which Moczo and Y.W. lived and where the attack transpired, placed the 911 call that the prosecution played for the jury. Y.W. had exited her apartment on the morning after the attack, and told Davis that her husband had beaten and raped her throughout the night. (Tr. 104, 108, 287.) Davis called 911 at Y.W.'s request, and told the operator that a resident's husband had beaten her. (*Id.* at 292; Resp't Memo, Ex. F.) He asked the operator to send a police officer, and then asked Y.W. if she needed an ambulance. (Resp't Memo, Ex. F.) Y.W. cried in the background, and replied that she needed an ambulance. (*Id.*) While Davis continued to speak with the 911 operator, Y.W. shouted, "That's him!" and Davis described the man exiting the building. (*Id.*)

Y.W. then took the phone and gave the operator the make, model, and license plate number of Moczo's car. (*Id.*) When asked by the operator whether her assailant was armed, Y.W. replied that he might have a box cutter and that he was likely heading to his mother's house. (*Id.*) She provided the operator with his mother's address and hung up. (*Id.*)

After a pretrial hearing on the admissibility of the 911 recording, the trial court declared that Davis's statements on the call qualified as present sense impressions based on what Y.W.

was telling him and his own observations at the scene. (*See* Tr. at 20-21.) The trial court further ruled that Y.W.'s statements on the tape were excited utterances and probative of the crimes charged and, therefore, the 911 call was admissible under these hearsay exceptions. (*Id.*)

Even if the trial court's admission of the 911 tape had been improper, there is no evidence to suggest that the admission denied Moczo a fundamentally fair trial. Both Davis and Y.W. testified in court, corroborating what they said in the 911 call and elaborating on the circumstances surrounding the call. (*Id.* at 105, 292.) The call did not provide facts not otherwise presented at trial; instead, the 911 call simply corroborated elements of Y.W.'s testimony. Y.W. testified at length regarding her experience, as did Davis, and both were cross-examined by Moczo's attorney. Thus, there is no evidence to suggest that without the admission of the call there would have existed reasonable doubt concerning Moczo's guilt.

Moczo further claims that the 911 phone call, in which his wife is heard identifying him as her assailant and requesting an ambulance, was inadmissible hearsay evidence in violation of *Crawford v. Washington*, 541 U.S. 36 (2004) (holding that out-of-court statements by witnesses that are "testimonial" are barred by the Confrontation Clause, unless witnesses are unavailable and defendant had a prior opportunity to cross-examine witnesses), and *Davis v. Washington*, 547 U.S. 813 (2006) (applying *Crawford* to 911 calls and concluding that the statements made by a domestic abuse victim in response to 911 operator's questions were not "testimonial" and, therefore were not subject to the Confrontation Clause because the victim was speaking about events as they were actually happening, not describing past events, and the "primary purpose" of the 911 operator's questioning was to enable police assistance for the victim).

It is unnecessary to decide whether Y.W.'s statements on the 911 call were testimonial because both Y.W. and Davis testified at Moczo's trial and Moczo's counsel cross-examined

both witnesses. (*See* Tr. at 150-88, 293-95.) Thus, Moczo's Sixth Amendment claim has no merit because he had full opportunity to face and cross-examine the witnesses recorded on the 911 call. *See California v. Greene*, 399 U.S. 149 (1970) (holding that when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints on the use of prior testimonial statements and the clause does not bar admission of a statement, so long as the declarant is present at trial to defend or explain it); *see also Crawford*, 541 US. at 58-59.

### 4. Legal Insufficiency of the Evidence

A petitioner "bears a very heavy burden" when challenging the legal sufficiency of the evidence in a state criminal conviction. *Einaugler v. Sup. Ct. of the State of New York*, 109 F.3d 836, 840 (2d Cir.1997) (quoting *Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir. 1993). A court must uphold a state criminal conviction if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also Policano v. Herbert*, 430 F.3d 82, 86 (2d Cir. 2005); *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002). When "faced with a record of historical facts that supports conflicting inferences, [this Court] must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994), *cert. denied*, 514 U.S. 1066 (1995) (quoting *Jackson*, 443 U.S. at 326).

In evaluating the sufficiency of the evidence in a state court conviction, the Court must look to state law to determine the elements of the crime. *Ponnapula*, 297 F.3d at 179; *Nova v. Artus*, No. 05 Civ. 8437 (NRB), 2007 WL 1988456, at *5 (S.D.N.Y. July 6, 2007). The first three counts of the indictment charge Moczo with rape in the first degree. In New York "[a]

14

person is guilty of rape in the first degree when he or she engages in sexual intercourse with another person [by] forcible compulsion." N.Y. Penal Law § 130.35 (McKinney 2012). Sexual intercourse is defined as having "its ordinary meaning and occurs upon any penetration, however slight." N.Y. Penal Law § 130.00[1]. Forcible compulsion is defined as meaning "to compel by either: a. use of physical force; or b. a threat, express or implied, which places a person in fear of immediate death or physical injury to himself, herself or another person . . ." N.Y. Penal Law § 130.00.

Y.W. testified at length as to the allegations against Moczo. She testified that he punched her in the arms, legs, and back before overpowering her by pinning her arms above her head and using his knees to spread her legs, when he raped her the first time. (Tr. at 68-70, 85-86.) She testified that he pressed a box cutter to her throat, asked her if she "want[ed] to die" and choked her when she tried to call for help during the second rape. (*Id.* at 85-86, 90-91.) She testified that the third rape occurred the morning after the first two, and Moczo threatened that he would "repeat what happened" the previous night if she did not comply. (*Id.* at 100-02.)

Moczo was also charged with three counts of criminal sexual act in the first degree. "[A] person is guilty of criminal sexual act in the first degree when he or she engages in oral sexual conduct or anal sexual conduct with another person [by] forcible compulsion." N. Y. Penal Law § 130.50[1]. Oral sexual conduct includes "conduct between persons consisting of contact between the mouth and the penis." N.Y. Penal Law § 130.00[2][a].

Y.W. testified that the first and third instance of forcible oral sex occurred in the same manner: Moczo forced her onto her back on the bed, with her arms pinned under Moczo's knees, and his body pinning hers. (Tr. at 72, 76-77, 82-83.) After Y.W. refused Moczo's demands for oral sex, he forced her to comply after positioning his penis over her face, pinched her nose so

that she had to breathe through her mouth, and placed his penis in her mouth. (*Id.* at 83.) She also testified that he forced her to perform oral sex while she was sitting on the toilet after going to the bathroom to wash out her mouth following the first forced act of oral sex. (*Id.* at 79-81.)

The final three counts of the indictment were one count of aggravated sexual abuse in the third degree, one count of criminal possession of a weapon in the third degree, and one count of endangering the welfare of a child. Aggravated sexual abuse in the third degree is defined as "insert[ion of] a foreign object in the vagina . . . of another person by forcible compulsion." N.Y. Penal Law § 130.66[1]. An individual is guilty of criminal possession of a weapon in the third degree if he commits criminal possession in the fourth degree, and has been previously convicted of any crime. N.Y. Penal Law § 265.02[1]. Criminal possession in the fourth degree includes possession of a dangerous knife or razor with the intent to use it unlawfully against another person. N.Y. Penal Law § 265.01[2]. Finally, a person is guilty of endangering the welfare of a child when he "knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old." N.Y. Penal Law § 260.10[1].

Y.W. testified that at some point during the night, Moczo retrieved a plastic water bottle used to fill up a water pistol, and that, although she could not see what he was doing, she believes that he inserted it into her vagina, causing her pain. (Tr. at 83-88.) Although Y.W. admitted not knowing exactly what object he used, she testified that she did not believe it to be part of the human body. (*Id.*) She also testified that Moczo threatened her with a box cutter by holding it to her throat. (*Id.*) Police recovered both the water bottle and the box cutter from the apartment, and the prosecution entered them into evidence at trial. (*Id.* at 118-20, 251-55.) Furthermore, there was no evidence to contradict Y.W.'s testimony that her four-year-old son

was in the room during the entirety of the assault, or the assertion that he was awake and crying throughout the night.

Dr. Mannino examined Y.W. the morning she escaped her apartment and notified the police. (*Id.* at 396-98.) While not dispositive that rape occurred, Dr. Mannino testified that the small amount of blood found inside Y.W.'s vagina was consistent with "trauma." (*Id.* at 406.) She also testified about the photographs she took of Y.W.'s body, which was scratched and bruised in a manner consistent with being beaten in the way Y.W. described. (*Id.* at 405.)

Although Moczo's counsel pointed out various minor inconsistencies between Y.W.'s testimony during the trial and some of her pretrial statements to the police and to the grand jury, these inconsistencies dealt with the order in which the assaults were perpetrated, not whether they had occurred or the identification of the perpetrator. Her testimony, and the testimony of the other witnesses presented by the prosecution, was not so incredible or inconsistent as to render the allegations unbelievable as a matter of law, and there is no further basis upon which to disturb the jury's credibility determination. Moczo fails to meet the heavy burden required for the Court to grant relief based on the legal insufficiency of the verdict.

### 5. Cruel and Unusual Punishment Claim

Finally, Moczo's claim that his sentence violates the Eighth Amendment is also without merit. When a sentence falls within the range prescribed by state law, a petitioner may not claim the length of the sentence as a basis for federal habeas relief. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) (per curiam) ("No federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law."); *see also, e.g., Webb v. LaClair*, No. 10 Civ. 7603 (PGG) (HBP), 2014 WL 4953559, at *1 (S.D.N.Y. Sept. 30, 2014); *Baide–Ferrero v. Ercole*, No. 06 Civ. 6961, 2010 WL 1257615, at *4 (S.D.N.Y. Mar. 31, 2010) (collecting cases).

Rape in the first degree and criminal sexual act in the first degree are class B felonies under New York law. N.Y. Penal Law §§ 130.35, 130.50. Because Moczo was a second felony offender convicted of a class B felony,[5] New York law prescribes a sentencing range from nine to twenty-five years of imprisonment for each of those offenses. N.Y. Penal Law § 70.06[3][b]. Aggravated sexual abuse in the third degree and criminal possession of a weapon in the third degree are both class D felonies under New York law. N.Y. Penal Law §§ 130.66, 265.02. New York law prescribes a sentence of between two and seven years of imprisonment for class D felonies, with the exception of criminal possession of a weapon in the third degree, for which the state provides a sentence of at least three-and-a-half years and no more than seven years. N.Y. Penal Law § 70.02[3][c]. Endangering the welfare of a child is a class A misdemeanor, for which the sentence shall not exceed one year. N.Y. Penal Law §§ 260.10, 70.15[1].

The trial court imposed a determinant prison term of twenty-three years for each of the six counts of rape and criminal sexual act, a determinant prison term of seven years for the aggravated sexual abuse count, an indeterminate term of three-and-a-half to seven years on the criminal possession of a weapon count, and a definite prison term of one year on the count of endangering the welfare of a child. (S. at 11-12.) All of the terms run concurrently with one another. (*Id.*) Because the sentence fell below the statutory maximum term of twenty-five years, Moczo's sentence does not present a cognizable claim for federal habeas relief.

Furthermore, this sentence does not violate the Eighth Amendment's prohibition against "cruel and unusual punishments." U.S. Const. amend. VIII. The Amendment prohibits only sentences that are "grossly disproportionate to the severity of the crime." *Rummel v. Estelle*, 445 U.S. 263, 271 (1980). Thus, "only in a rare case should a court engage in reviewing

---

[5] In 1997, Moczo was convicted of burglary in the first degree, N.Y. Penal Law § 140.30. *People v. Moczo*, 261 A.D.2d 340 (1999) (affirming Moczo's conviction of two counts of burglary in the first degree).

disproportionality of sentences" because the legislature's decision concerning fixing prison terms is "presumptively valid." *United States v. Gonzalez*, 922 F.2d 1044, 1053 (2d Cir. 1991).

Here, the jury convicted Moczo of multiple counts of violent crimes, and his sentence was below the statutory maximum term of imprisonment. Thus, his sentence was not so disproportionate as to constitute one of the rare instances in which a noncapital sentence violates the Eighth Amendment. *See, e.g.*, *Hutto v. Davis* 454 U.S. 370 (per curiam) (reversing the Court of Appeals and holding that forty years of imprisonment and a $20,000 fine upon conviction of possession of marijuana with intent to distribute and distribution of marijuana did not violate the Eighth Amendment); *United States v. VanHoesen*, 450 F. App'x 57, 65 (2d Cir. 2011) (holding that mandatory life imprisonment without possibility of parole for conspiracy to distribute fifty grams or more of crack cocaine, as a third felony drug offense, did not violate the Eighth Amendment).

Finally, Moczo's contention that he is subject to a statutory maximum post-release supervision sentence of no more than five years in the aggregate is misguided. New York Penal Law § 70.45[2-a] governs periods of post-release supervision for felony sex offenses. Subsection (i) prescribes a term of post-release supervision of no less than ten and no more than twenty-five years for sentences imposed pursuant to New York Penal Law § 70.04, governing second violent felony offenses, and following a felony sex offense. The trial court judge sentenced Moczo pursuant to this statute because of his previous burglary conviction in the first degree and his subsequent conviction of rape and criminal sexual act in the first degree. (*See* S. at 2-3, 11.) Thus, the court's imposition of twenty-three years of post-release supervision is within the range prescribed by state law and is not cognizable on habeas review.

## IV. CONCLUSION

Moczo has failed to exhaust the claims in his Petition, and I recommend that the Petition be **DISMISSED**. Even if he had exhausted these claims, the claims are without merit, and I would recommend that the Petition be **DENIED**.

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Annalisa Torres, 500 Pearl Street, Room 2210, New York, NY 10007 and to the chambers of the undersigned, 500 Pearl Street, Room 1970, New York, NY 10007. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(d); *Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

**DATED: May 4, 2015**
**New York, New York**

Respectfully Submitted,

The Honorable Ronald L. Ellis
United States Magistrate Judge